UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**ERNEST YOUNG,** on behalf of himself and all others similarly situated**,**
    **Plaintiff,**

v.

**THE WASHINGTON TRUST COMPANY,**
    **Defendant.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

**NOW COMES** the Plaintiff, Ernest Young, on behalf of himself and all others similarly situated, sues Defendant, Washington Trust Company, and alleges as follows:

### INTRODUCTION

1. This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant, The Washington Trust Company ("Washington Trust"), arising from the unfair and unconscionable assessment and collection of multiple $35.00 "returned item fees" ("NSF Fees") on the same item on consumer checking accounts.

2. Besides being deceptive, unfair, and unconscionable, this practice breaches contract promises made in Washington Trust's adhesion contracts.

3. Plaintiff and other Washington Trust customers have been injured by Washington Trust's practices. On behalf of himself and the putative class, Plaintiff seeks damages, restitution, and injunctive relief for Washington Trust's breach of contract and/or unjust enrichment.

## PARTIES

4. Plaintiff is a resident of Rhode Island and a Washington Trust customer.

5. The Washington Trust Company is a state bank with its headquarters and principal place of business located in Westerly, Rhode Island. Washington Trust has $5 billion in assets and provides banking services to customers through 25 bank branches in Rhode Island and several branches in Massachusetts and Connecticut as well. Among other things, Washington Trust is engaged in the business of providing retail banking services to consumers, including to Plaintiff and members of the putative class.

## JURISDICTION

6. This Court has original jurisdiction under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than the Defendant.

7. Washington Trust regularly and systematically conducts business and provides retail banking services in this district and provides retail banking services to customers in this district, including Plaintiff and members of the putative class.

## VENUE

8. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Washington Trust is subject to personal jurisdiction in this Court and regularly conducts business within this district. Thus, many of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. WASHINGTON TRUST CHARGES TWO OR MORE NSF FEES ON THE SAME ITEM

9. Washington Trust's account documents allows it to take certain steps when a bank accountholder attempts an Automated Clearing House ("ACH") payment but does not have sufficient funds to cover it. Specifically, the Bank may: (a) authorize the transaction and charge a *single* $35 Overdraft Fee ("OD Fee"); or (b) reject the transaction and charge a *single* $35 NSF Fee.

10. In contrast to its account documents, however, Washington Trust regularly assesses two or more NSF Fees on the *same* item.

11. Plaintiff does not dispute Washington Trust's right to reject an item and charge a *single* NSF Fee, but Washington Trust unlawfully maximizes its already profitable NSF Fees with deceptive practices that also violate the express terms of its account documents.

12. Specifically, Washington Trust unlawfully assesses *multiple* NSF Fees on a single ACH item.

13. Unbeknownst to consumers, each time Washington Trust reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, Washington Trust chooses to treat it as a new and unique item or item that is subject to yet another NSF Fee. But Washington Trust's account documents never disclose that this counterintuitive and deceptive result could be possible and, in fact, state the opposite.

14. The account documents indicate that only a *single* NSF Fee will be charged per "item"; however, many times that item is reprocessed with no request from the customer to do so. An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes.

15. This abusive practice is not universal in the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is reprocessed for payment multiple times.

16. Washington Trust's account documents never disclose this practice. To the contrary, the Bank's account documents indicate it will only charge a single NSF Fee per "item."

A. **Plaintiff's Experience**

17. On numerous occasions on Plaintiff's account, Washington Trust: (aa) reprocessed a previously declined item; and (bb) charged a fee upon reprocessing.

18. *Accordingly, on numerous occasions, Washington Trust charged Plaintiff $70.00 or more in NSF Fees to attempt to process a single item.*

19. Plaintiff understood such ACH payments to be a single item as is laid out in Washington Trust's account documents, capable at most of receiving a single NSF Fee (if Washington Trust returned it) or a single OD Fee (if Washington Trust paid it).

**B. The Imposition of Multiple NSF Fees on a Single Item Violates Washington Trust's Express Promises and Representations**

20. The account documents provide the general terms of Plaintiff' relationship with Washington Trust, and therein Washington Trust makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

21. The account documents contain explicit terms indicating that NSF Fees will only be assessed once per item, when in fact Washington Trust regularly charges two or more NSF Fees per item even though a customer only requested the payment or transfer once.

22. Washington Trust's account documents indicate that a singular NSF Fee can be assessed on checks, ACH debits and electronic payments.

23. Washington Trust's account documents state that it will charge $25.00 or $35.00 per item that is returned due to insufficient funds. According to the Deposit Agreement, Ex. 2:

> If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (returned item). The amounts of the overdraft and returned item fees are disclosed elsewhere.

24. According to the Consumer Fee Schedule ("Fee Schedule"), Ex. 1, a singular fee will be charged for "each item… which causes a returned item":

> Returned Item Fee Schedule: Fee applies to insufficient and uncollected items created by the decline or return of unpaid checks, or other electronic withdrawals such as Automated Clearing House (ACH) payments presented for the payment, withdrawal, or transfer of funds from the account.

- Each item that is $4.99 or less which causes a returned item…   No Charge
- Each item that is between $5.00 and $34.99 which causes a returned item…   $25.00
- Each item that is $35.00 or greater which causes a returned item…   $35.00

25. The Fee Schedule, therefore, states that a <u>single</u> fee will be assessed per "item."

26. Further, the Fee Schedule makes clear that, for all transaction types (whether debit card, check, ACH, or other transaction), only a <u>single</u> NSF Fee or OD Fee can be charged. Indeed, more than one OD Fee is impossible for transactions like debit card transactions, which can only possibly be paid or rejected one time. Washington Trust uses identical language to describe OD Fees and NSF Fee, even though it is impossible for any item to incur more than one OD Fee.

27. Indeed, all other transaction and fee types covered by the Fee Schedule can only occur once, and there is no warning that only a certain type of transaction or fee (the NSF Fee) can happen more than once. This is yet another indication to reasonable consumers that the contract means a single NSF Fee may be charged per item.

28. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

29. There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple NSF Fees.

30. Even if Washington Trust reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

31. The disclosures described above never discuss a circumstance where Washington Trust may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

32. In sum, Washington Trust promises that, at most, one $35.00 NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Washington Trust breached the contract when it charged more than one fee per item.

33. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in Washington Trust's account documents.

34. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item", which it will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Washington Trust disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Washington Trust customers ever agree to such fees.

35. Customers reasonably understand, based on the language of the account documents and Washington Trust's other account documents, that its reprocessing of

checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

36. Banks and credit unions like Washington Trust that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their account holders—something Defendant here never did.

37. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Washington Trust, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Sept. 2018), https://www.firstcitizens.com/ personal/banking/deposit-agreement (emphasis added).

38. First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last accessed August 30, 2019) (emphasis added).

39. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (emphasis added).

40. First Financial Bank in Ohio, aware of the commonsense meaning of "item," clarifies the meaning of that term to its accountholders:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (emphasis added).

41. Central Pacific Bank, a leading bank in Hawaii, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32.00 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

42. BP Credit Union likewise states: "Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

43. Washington Trust provides no such disclosure, and in so doing, deceives its accountholders.

C. **The Imposition of Multiple NSF Fees on a Single Transaction Breaches Washington Trust's Duty of Good Faith and Fair Dealing**

44. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Washington Trust is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Washington Trust has a duty to honor transaction requests in a way that is fair to Plaintiff

and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

45. Here—in the adhesion agreements Washington Trust foisted on Plaintiff and its other customers—Washington Trust has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Washington Trust abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

46. When Washington Trust charges multiple NSF Fees, the credit union uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Washington Trust uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

47. In addition, Washington Trust exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, Washington Trust abuses the power it has over customers and their bank accounts and acts contrary to his reasonable expectations under the account documents. This is a breach of Washington Trust's implied covenant to engage in fair dealing and act in good faith.

48. It was bad faith and totally outside of Plaintiff' reasonable expectations for Washington Trust to use its discretion to assess two or three NSF Fees for a single attempted payment.

49. When Washington Trust charges multiple NSF Fees, the bank uses its discretion to define contract terms in an unreasonable way that violates common sense and reasonable consumer expectations. Washington Trust uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

50. Moreover, Washington Trust provides itself discretion to refuse to reprocess transactions that are initially rejected. It abuses that discretion when it repeatedly reprocesses transactions and charges NSF Fees each time.

## CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23. The proposed class is defined as:

> All Washington Trust checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item.

52. Excluded from the class are Washington Trust, its subsidiaries and affiliates, its officers, directors, the members of their immediate families, and any entity in which Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

53. Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

54. This case is properly brought as a class action under Federal Rule 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

55. *Numerosity under Fed. R. Civ. P. 23(a)(1)*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Class consists of many thousands of members, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Washington Trust's records. Through the evaluation of Washington Trust's data, it is possible to identify all members of the Class and the amount of improper fees paid by each Class member. Such specific information is not otherwise available to Plaintiff, but must be maintained pursuant to federal law, and is subject to suitable discovery.

56. *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Class relating to Washington Trust's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

   aa) Whether Washington Trust improperly charged more than one NSF Fee on the same item;

   bb) Whether Plaintiff and other members of the Class have sustained damages as a result of Washington Trust's assessment and collection of the improper fees, and the proper measure of damages.

57. *Typicality under Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by Washington Trust, as described herein.

58. *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the Class in that he has a Washington Trust checking account and has suffered damages as a result of Washington Trust's assessment and collection of improper fees. In addition:

    aa) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

    bb) There is no hostility of interest between Plaintiff and the unnamed Class members;

    cc) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    dd) Plaintiff's legal counsel have the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

59. *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

60. *Superiority under Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of Washington Trust are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Washington Trust's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

61. All conditions precedent to bringing this action have been satisfied and/or waived.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

62. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

63. Plaintiff and the other members of the Class formed a contract with Washington Trust. The terms of that contract include the promises and affirmations of fact made by Washington Trust as described above.

61. Specifically, Washington Trust customers were promised that Washington Trust would only charge a single NSF Fee per item.

62. No contract provision authorizes Washington Trust to charge more than one NSF Fee per item.

63. Therefore, Washington Trust breached the terms of its account documents by charging Plaintiff and Class members interest on cash advance amounts that were previously paid back in full.

64. Plaintiff and the other members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

65. Plaintiff and the other members of the Class have sustained damages as a result of Washington Trust's breach of the contract.

## SECOND CLAIM FOR RELIEF
**(Breach of the Covenant of Good Faith and Fair Dealing)**

66. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67. Plaintiff and the other members of the Class formed a contract with Washington Trust. The terms of that contract include the promises and affirmations of fact made by Washington Trust in the Customer Agreement as described above.

68. Under the Rhode Island laws, good faith is an element of every contract pertaining to the assessment of interest charges. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

69. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

70. Washington Trust has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

71. Washington Trust abuses its contractual discretion to cause consumers to pay more than one NSF Fee per item.

72. Plaintiff and the other members of the Class have performed all, or substantially all, of the obligations imposed on them under the account documents.

73.     Plaintiff and the other members of the Class have sustained damages as a result of Washington Trust's breach of the covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the other members of the Class demand a jury trial on all claims so triable and judgment against Washington Trust as follows:

A.     An Order certifying that this action may be maintained as a class action, and that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.     A declaration that Washington Trust's policies and practices constitute breach of contract and the covenant of good faith and fair dealing;

C.     An Order requiring Washington Trust to immediately cease the wrongful conduct set forth above and enjoining Washington Trust from conducting business via the breaches of contract complained of herein;

D.     Restitution of all interest charges paid to Washington Trust by Plaintiff and the other members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Actual damages, statutory and/or punitive damages in an amount to be determined at trial;

F.     Pre-judgment interest at the maximum rate permitted by applicable law;

G.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees and costs pursuant to applicable law; and

H.    Such other injunctive relief, equitable relief or other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: October 4, 2019                    Respectfully submitted,

/s/Christopher M. Lefebvre, Esq. #4019
Consumer & Family Law Center of
Claude F. Lefebvre | Christopher M. Lefebvre, PC
PO Box 479 • Pawtucket • RI • 02862
Tel: (401) 728-6060 • Fax: (401) 728-6534
chris@lefebvrelaw.com

/s/Jeffrey Kaliel, Esq. (to be admitted *pro hac vice*)
/s/Sophia Gold, Esq. (to be admitted *pro hac vice*)
KALIEL PLLC
1875 Connecticut Avenue, NW, 10th Floor
Washington, DC 2009
Tel: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

*Attorneys for Plaintiff
and the Putative Class*